# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BETTY JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-7930** |
| **INVESTOR EQUITIES, L.L.C. ET AL** | **SECTION: "S" (2)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Graystar Mortgage, L.L.C.'s **Motion to Dismiss** (Rec. Doc. 23) is **GRANTED** in part, and the rescission claim against Graystar is dismissed;

**IT IS FURTHER ORDERED** that Investor Equities' **Motion for Summary Judgment** on Plaintiff's Complaint (Rec. Doc. 24) is **DENIED** with respect to the question of prescription and **DENIED** as moot with respect to all other issues;

**IT IS FURTHER ORDERED** that Investor Equities' **Motion for Summary Judgment** on its Counterclaim (Rec. Doc. 25) is **DENIED** as moot;

**IT IS FURTHER ORDERED** that Betty Johnson's **Motion for Time for Additional Discovery** Under Federal Rule 56(d) (Rec. Doc. 33) is **DENIED** as moot.

Before the court are the following motions: Greystar Mortgage, L.L.C.'s 12(c) **Motion to Dismiss**; Investor Equities' **Motion for Summary Judgment** on Plaintiff's Complaint; Investor Equities' **Motion for Summary Judgment** on its Counterclaim; and Betty Johnson's **Motion for Time for Additional Discovery** under Federal Rule 56(d). Following the Magistrate Judge's grant of leave for plaintiff to file her amended complaint (Rec. Doc. 55), counsel informed the

court that Graystar Mortgage, L.L.C.'s ("Graystar's") Motion was still valid and pending, Investors Equities' motions were moot except with regard to whether plaintiff's claims were prescribed, and plaintiff's Rule 56(d) motion was moot.

Accordingly, the court considers Graystar's motion to dismiss, and Investors Equities' summary judgment motions solely with respect to the prescription issue.

## BACKGROUND FACTS

The following factual allegations relevant to the pending motions are taken from plaintiff's amended complaint. Plaintiff is an elderly homeowner living on social security income, who owns her principal dwelling at 4842 Strasbourg Street in New Orleans. Until the transactions that are the subject of this suit, she owned the home free and clear of any encumbrances.

Plaintiff's complaint alleges that on or about February 2015, Johnson contacted Bruce Coffman at America's Mortgage Resource about a reverse mortgage. She was informed that repairs were needed to her residence to qualify for a reverse mortgage, and for a fee, Coffman arranged for financing with Michael Brown for the home improvements. Plaintiff entered into a consumer credit transaction with Brown secured by her primary residence. She signed two promissory notes to Brown totaling $27,000.00, with interest only payments to begin on May 1, 2016. The notes were scheduled to mature on October 1, 2015. Johnson had the requested repairs performed over the course of 2015 and 2016, but did not receive a reverse mortgage.

In August 2016, Johnson approached Coffman regarding the matured notes. Coffman then arranged financing with Investor Equities, an LLC for which Coffman is an officer and

manager. On August 8, 2016, plaintiff entered into a consumer credit transaction with Investor Equities. She borrowed $60,000.00 from Investor Equities, secured by a mortgage on her home, in a transaction that involved $24,894.94 in settlement charges, including $11,568.00 in loan fees and costs, paid to Investor Equities, which amounted to approximately 28% of the total loan amount. The twelve $600.00 interest only payments were prepaid as part of the settlement charges, as were homeowners and flood insurance. Her principal loan balance, previously $27,675.00, was now $60,000.00. Plaintiff did not receive any consumer counseling regarding the transaction. Investor Equities transferred its interest in plaintiff's mortgage to Graystar.

In August of 2017, plaintiff's $60,000.00 balloon payment became due, and she contacted Coffman. Again, Coffman arranged additional financing through Investor Equities, which took a new security interest in plaintiff's home. The loan proceeds were used in part to pay off the Graystar loan. In connection with the August 2017 transaction, plaintiff's total settlement charges were $13,487.87, which included a payment to Investor Equities of $4200.00 in points and fees, approximately 6.2% of the total loan amount, as well as six prepaid interest payments of $750 per month, and homeowners and flood insurance. At the time she made the loan, the interest only payments were $750 per month, and plaintiff's income from social security was $677.00 per month. She did not receive consumer counseling regarding the transaction. Investor Equities transferred its interest in the mortgage to Michael Brown.

In this lawsuit, Johnson seeks to rescind both the 2016 and 2017 transactions for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602(bb). She alleges that the

original creditor, Investor Equities, was subject to the requirements of TILA and HOEPA, that material disclosures required under TILA and HOEPA were not provided to her in connection withe 2016 transaction, and that the terms of the 2016 transaction include provisions that violated HOEPA restrictions. With respect to Graystar, Johnson claims that she is entitled to rescission under TILA and HOEPA for the 2016 mortgage loan against Graystar as assignee, and for damages under HOEPA against Graystar as assignee.

## DISCUSSION

### I. Greystar's Rule 12(c) Motion to Dismiss

Greystar seeks dismissal of plaintiffs claims under Rule 12(c) on three bases: (1) that Johnson's TILA and HOEPA claims are barred by a one-year statute of limitations; (2) that Greystar is not liable to Johnson under TILA as an assignee; and (3) that Johnson cannot state a rescission claim against Greystar, because she did not enter into a transaction with Graystar.

#### A. *Rule 12(c) Standard*

A party may move for judgment on the pleadings after an answer has been filed. FED. R. CIV. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." Chauvin v. State Farm & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

4

(even if doubtful in fact)." Id. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). A district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6))

### B.  *Plaintiff's TILA and HOEPA claims are not prescribed*.

It is undisputed that plaintiff's claims for rescission under TILA and HOEPA are subject to a three-year statute of limitations. See, 15 U.S.C. §1635(f); Taylor v. Domestic Remodeling, Inc., 97 F.3d 96, 98 (5th Cir. 1996)("If the creditor fails to deliver the forms, or fails to provide the required information, then the consumer's right of rescission extends for three years after the date of consummation of the transaction."). However, Graystar argues that the damages claim against it under HOEPA is subject to a one-year limitations period. Graystar further argues that the transaction in question took place on August 8, 2016, suit was not filed until August 20, 2018, and thus plaintiff's claims are time-barred. In arguing for a one year limitations period, Graystar points the court to cases involving loans predating 2010.

However, in 2010, Congress amended HOEPA as follows:

> Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation.

15 U.S.C. § 1640(e).

In this case, plaintiff's HOEPA claims are premised on 15 U.S.C. § 1639. Accordingly,

5

her claims are subject to a three-year prescriptive period, and are not prescribed.

### C. *Greystar may be liable as an assignee*.

The allegations of plaintiff's complaint against Graystar, for rescission under TILA and HOEPA and for damages under HOEPA, are premised on Graystar's status as an assignee of the 2016 loan. Graystar argues that is it cannot be liable as to Johnson as an assignee because the violations complained of do not appear on the face of the disclosure statement, citing 15 U.S.C. § 1641(a).

Title 1641(a) provides:

> **Except as otherwise specifically provided** in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement. . . .

15 U.S.C.A. § 1641(a)(emphasis added).

However, section 1641 goes on to state:

> Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa)[1] of this title shall be subject to all claims and defenses with

---

[1] The provision referred to as 1602(aa), has been re-codified at 1602(bb), and provides:

The term "high-cost mortgage", and a mortgage referred to in this subsection, means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a reverse mortgage transaction, if–

   (i) in the case of a credit transaction secured–

   (I) by a first mortgage on the consumer's principal dwelling, the annual percentage rate at consummation of the transaction will exceed by more than 6.5 percentage points (8.5 percentage points, if the dwelling is personal property and the transaction is for less than $50,000) the average prime offer rate, as defined in section

respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

15 U.S.C. § 1641(d)(1).

Applying the foregoing, Graystar, as assignee of the mortgage from Investor Equities, is subject to all claims which plaintiff may bring against Investor Equities. As well, while ordinarily such an action could only be maintained against an assignee if the violation was apparent on the face of the disclosure statement, plaintiff has alleged that the assigned instrument

---

1639c(b)(2)(B) of this title, for a comparable transaction; or

(II) by a subordinate or junior mortgage on the consumer's principal dwelling, the annual percentage rate at consummation of the transaction will exceed by more than 8.5 percentage points the average prime offer rate, as defined in section 1639c(b)(2)(B) of this title, for a comparable transaction;

(ii) the total points and fees payable in connection with the transaction, other than bona fide third party charges not retained by the mortgage originator, creditor, or an affiliate of the creditor or mortgage originator, exceed–

(I) in the case of a transaction for $20,000 or more, 5 percent of the total transaction amount; or

(II) in the case of a transaction for less than $20,000, the lesser of 8 percent of the total transaction amount or $1,000 (or such other dollar amount as the Board shall prescribe by regulation); or

(iii) the credit transaction documents permit the creditor to charge or collect prepayment fees or penalties more than 36 months after the transaction closing or such fees or penalties exceed, in the aggregate, more than 2 percent of the amount prepaid.

15 U.S.C. § 1602(bb).

7

was a high-cost mortgage as defined in 15 U.S.C. § 1602(bb) (formerly § 1602(aa)). Thus Graystar, as assignee, must demonstrate by a preponderance of the evidence that a reasonable person exercising ordinary due diligence, could not determine, based on the legally required documentation, the itemization of the amount financed, and other disclosure of disbursements, that the mortgage was a [high-cost] mortgage. See 15 U.S.C. § 1641(d)(1).

Plaintiff's complaint alleges that the original creditor was subject to TILA and HOEPA, that the material disclosures required under those laws were not provided to her by the original creditor for the 2016 transaction, and that the terms of the 2016 transactions included provisions that violated HOEPA restrictions. She has also alleged that Graystar accepted the assignment of the loan, and the documentation provided to Graystar upon assignment provided easily accessible information reflecting that terms of the agreement violated TILA and HOEPA, and thus that a reasonable person exercising due diligence would have known the loan was covered by and violated HOEPA.

Accepting these allegations as true, as the court must on a motion for judgment on the pleadings, plaintiff has adequately pleaded a claim against Graystar as assignee.

### D. *Plaintiff cannot state a rescission claim against Graystar.*

Graystar also argues that plaintiff has failed to allege a rescission claim against it, because she did not enter any transactions with Graystar, and that the August 2016 mortgage that was assigned to Graystar was paid off by the August 21, 2017 mortgage. Thus, Graystar alleges that the only transaction subject to rescission is the August 2017 transaction, in which it did not participate. Essentially, Graystar argues the plaintiff's refinancing of the 2016 loan destroyed any

8

rescission claim she might have had against Graystar.

Plaintiff argues that because Graystar accepted assignment of the 2016 mortgage it is subject to rescission under TILA to the same extent as the original creditor, Investor Equities, regardless of the fact that the loan was refinanced.

Plaintiff is correct to the extent that refinancing a loan and extinguishing the underlying security interest does not necessarily extinguish the right to rescission. Because rescission unwinds the entire transaction, it results not only in the release of the security, but also the return of any finance or other charge paid by the borrower. "When an obligor exercises his right to rescind . . . he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(b).

However, as Graystar argues, plaintiff did not make any payments to Graystar in connection with the 2016 transaction that could conceivably be rescinded and returned to her. The HUD-1 statement attached to the complaint reflects that all of the loan fees and costs were paid to Investor Equities and Bruce Coffman.

Moreover, the documentation of the assignment attached to the complaint does not reflect any payments by Johnson to Graystar. Rather, Investor Equities, through its agent and sole member, Bruce Coffman, borrowed $60,000.00 from Graystar, securing its promissory note by the assignment of Johnson's loan and mortgage. Thus, though Graystar is an assignee of the loan, it received nothing from Johnson beyond the security interest (which has been released by Graystar), and there is nothing left to rescind.

In so finding, the court notes that in the principal case relied upon by plaintiffs, in which the Sixth Circuit held that refinancing does not extinguish a rescission right, the plaintiffs therein advanced claims to void the security agreement, and for the return of prepayment penalties, mortgage filing fees, loan transaction fees, appraisal fees, and closing costs. Barrett v. JP Morgan Chase Bank, N.A. 445 F3d 874, 877-78 (6th Cir. 2006). There are no allegations that plaintiff made any such payments to Graystar, and thus there is no viable claim for their return via rescission.

## II.     Investor Equities' Motions for Summary Judgment

Investor Equities filed two motions for summary judgment, one on plaintiff's original complaint, and one on its counterclaim. Following the filing of its amended complaint, counsel for Investor Equities informed the court that all issues raised in the motions were moot except for the prescription argument set forth in the motion for summary judgment on plaintiff's complaint.

For the reasons stated above in connection with Graystar's motion to dismiss, the court finds that plaintiff's claims are not prescribed and the motion is denied to that extent. In all other respects, it is denied as moot based on the representations of Investors Equities.

## CONCLUSION

Graystar Mortgage, L.L.C.'s Motion to Dismiss (Rec. Doc. 23) is granted in part, and the rescission claim against Graystar is dismissed. Investor Equities' Motion for Summary Judgment on Plaintiff's Complaint (Rec. Doc. 24) is denied with respect to the question of prescription and denied as moot with respect to all other issues. Investor Equities' Motion for Summary Judgment on its Counterclaim (Rec. Doc. 25) is denied as moot. Betty Johnson's Motion for Time for

Additional Discovery Under Federal Rule 56(d) (Rec. Doc. 33) is denied as moot.

New Orleans, Louisiana, this __28th__ day of March, 2019.

                                                      **MARY ANN VIAL LEMMON**
                                                 **UNITED STATES DISTRICT JUDGE**